**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Lisa White,

Plaintiff,

v.

USAA Insurance Agency Incorporated, et al.,

Defendants.

No. CV-24-00378-PHX-KML

**ORDER**

In August 2020, Jack Eddia purchased a BMW from Dezmond Ford. At the time of the purchase, Ford had car insurance through defendant USAA Insurance Agency Inc. In November 2020, Eddia was driving the BMW when he struck and killed plaintiff Lisa White's son. White argues the USAA policy issued to Ford still applied at the time of the accident while USAA argues it did not. The policy likely did not apply, but Arizona law prevents an insurer from retaining the premiums while claiming the policy was invalid as USAA did here. White's motion for partial summary judgment is granted.

## I. Background

For "several years" before August 2020, Dezmond Ford purchased insurance policies from USAA. (Doc. 46-1 at 13.) On August 7, 2020, Ford purchased a policy to cover a 2013 BMW. (Doc. 46-1 at 13.) That policy was to be effective from August 7, 2020 to December 27, 2020. (Doc. 46-1 at 2.) The "Declarations" page indicated a "6 month[1] premium" of $327.51 that was "due at inception." (Doc. 46-1 at 2.) USAA appears to

[1] There is no explanation why the document states the premium was for six months but the policy was only to be in effect from August to December.

believe Ford paid the full premium shortly after the policy took effect. (Doc. 58 at 3.)

On August 31, 2026, Ford sold the BMW to Jack Eddia. (Doc. 46-1 at 13.) Ford had "no prior association with Mr. Eddia" and "no ownership, control, access, or ability to use the [BMW] after August 31, 2026." (Doc. 46-1 at 14.) At the time of the sale, Ford did not tell USAA he had sold the BMW nor that "Eddia would be operating [it]." (Doc. 46-1 at 14.) Ford later explained to USAA that after he sold the BMW, his intent was to keep the policy active "because [the BMW] was the only vehicle on policy and he had heard it was better not to have a gap in insurance/coverage." (Doc. 46-1 at 30.)

Eddia had the title transferred to him on September 5, 2020, and he registered the BMW on October 1, 2020. (Doc. 46-1 at 22.) On November 1, 2020, Eddia was driving the BMW when he struck and killed Lisa White's son. (Doc. 46-1 at 37.) It appears Ford had no idea this accident occurred, and no one informed USAA. For reasons unrelated to the accident, Ford removed the BMW from his insurance policy on December 23, 2020. (Doc. 46-1 at 17.) USAA admits it "received and accepted premium payments" on Ford's policy "up to and including the date" of the incident. (Doc. 48-2 at 1.) USAA claims that if Ford had notified it he had sold the BMW, it "would have cancelled the Policy." (Doc. 46-1 at 17.) But even after learning the BMW had been sold in August 2020, USAA "did not refund any premium payments to [Ford]." (Doc. 48-2 at 2.) In other words, after USAA learned Ford sold the BMW in August 2020 and an accident occurred that November, it chose to retain the portion of Ford's premium intended to cover the period from August 2020 to December 2020.

In August 2021, White filed a wrongful death suit against Eddia. (Doc. 46-1 at 24.) Around this time, USAA first learned the BMW had been sold in August 2020. (Doc. 46-1 at 34.) White's counsel sent a letter to USAA claiming Ford's insurance policy covered Eddia. (Doc. (Doc. 46-1 at 38.) The letter demanded payment of the policy limits. It also asserted that if USAA claimed there was no coverage, White's counsel would "contact Mr. Eddia about an assignment of his bad-faith rights." (Doc. 46-1 at 38.) After some additional communications with White's counsel, USAA sent him a "Review Coverage Decision."

According to that letter, there was "no coverage available for this loss" because Ford "did not own the vehicle at the time of this loss." (Doc. 46-1 at 49.)

White dismissed her first suit against Eddia but her counsel negotiated a *Damron* agreement with Eddia to assign his rights against USAA to White and allow for White to obtain default judgment against him. (Doc. 46-1 at 54.) White then filed a second lawsuit against Eddia (Doc. 46-1 at 59) and the state court entered judgment against Eddia for $3,750,000 (Doc. 46-1 at 73). In October 2023, White filed the present suit against USAA, asserting two claims as Eddia's assignee: breach of contract and bad faith. (Doc. 14 at 5-6.) The parties filed early motions for summary judgment, but the court denied those motions and directed the parties to conduct discovery. (Doc. 37.) The parties did so and filed another set of motions for summary judgment. (Docs. 46; 47.) White seeks partial summary judgment on one of USAA's affirmative defenses and USAA seeks summary judgment on both of White's claims in their entirety. The cross-motions boil down to "whether USAA correctly denied coverage." (Doc. 55 at 3.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322– 23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth

at trial." *Id*. at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

**III. Cross-Motions**

USAA's motion for summary judgment presents four arguments, although the third and fourth appear to be the same. First, the policy "prohibited the transfer or assignment of Mr. Ford's rights" to Eddia. (Doc. 46 at 2.) Second, Ford breached the policy's requirements by failing to notify USAA that he sold the vehicle to Eddia. (Doc. 46 at 2.) Third, "Ford's sale of the Vehicle extinguished his insurable interest in the Vehicle and consequently rendered the Policy unenforceable." (Doc. 46 at 2.) And fourth, the Arizona Court of Appeals has addressed a similar situation and determined the "insurable interest" doctrine prevents coverage. (Doc. 46 at 2.) White's motion for summary judgment is addressed solely to the applicability of the "insurable interest" doctrine. (Doc. 47 at 2-3.) The cross-motions on that doctrine will be addressed together after assessing USAA's other arguments.

**A. Transfer or Assignment**

USAA's first argument is the insurance policy prohibited Ford from transferring or assigning his rights. (Doc. 46 at 6-7.) White's argument for coverage is based on the policy language that defined "Covered Person" as "Any person using your covered auto." (Doc. 55-3 at 2.) The policy defined "Your covered auto" as "Any vehicle shown on the Declarations." (Doc. 55-3 at 2.) And the Declarations listed the BMW. (Doc. 46-1 at 2.) White argues these definitions are broad enough that Eddia was covered by the policy when he killed White's son. (Doc. 55 at 6.) According to White, this coverage theory "does not involve claims of 'assignment' or 'transferability' and does not need to." (Doc. 55 at 6.)

USAA's reply argues White's coverage theory is "irrelevant" because Ford no longer had an "insurable interest" in the BMW after he sold it to Eddia. (Doc. 58 at 5.) USAA then makes additional arguments regarding transferability and assignment (Doc. 58 at 5-6), but does not explain why those arguments are relevant given that White has explicitly disclaimed any reliance on transferability or assignment.

White has expressly waived any reliance on a theory involving Ford assigning or transferring his rights under the policy to Eddia. Because White is not pursuing these theories, USAA's arguments addressed to them are irrelevant. USAA is not entitled to summary judgment on claims or theories White is not pursuing.

**B. Notice of Change**

USAA argues Ford breached the policy by failing to inform USAA that he sold the BMW. The USAA policy contained a section titled "Changes." (Doc. 46-1 at 9.) That section stated "[t]he premium is based on information we have received from you and other sources." (Doc. 46-1 at 9.) Changes to the premium could be necessary due to "risk exposure changes," such as changing where a "vehicle is garaged," "[d]eletion of a vehicle," or "[a]ddition or deletion of an operator." (Doc. 46-1 at 9.) The policy also stated "[y]ou agree to give us notice of any exposure change as soon as is reasonably possible." (Doc. 46-1 at 9.) USAA argues Ford breached this section by not immediately informing it he sold the BMW. (Doc. 46 at 8.)

In general, "an insurance company is not relieved of its contractual liability because of the insured's failure to give notice unless it can show that it has been prejudiced thereby." *Lindus v. N. Ins. Co. of New York*, 438 P.2d 311, 315 (Ariz. 1968). USAA agrees "[a]n insured's breach of a condition results in no coverage if the breach prejudices an insurer." (Doc. 46 at 8). USAA asserts it *has* been prejudiced by Ford's failure to provide notice because had it been notified, it "would have acted differently" by cancelling the policy. (Doc. 46 at 8.)

The issue of an insurer suffering prejudice usually arises in the context of an insured failing to provide timely notice after a loss. *Id.* at 314 (insurer did not learn of incident for two years). In that context, an Arizona court determined the insurer had not shown sufficient prejudice based on a delayed notice of a loss because the insurer still had "ample time to investigate the incident and prepare for trial." *Globe Indem. Co. v. Blomfield*, 562 P.2d 1372, 1374 (Ariz. Ct. App. 1977). Another Arizona court found an insurer had not shown prejudice from a late notice of a loss because it "did not present any evidence that,

had it immediately been informed of the accident by the insureds, it then would have undertaken an investigation of the accident." *Liberty Mut. Fire Ins. Co. v. Mandile*, 963 P.2d 295, 303 (Ariz. Ct. App. 1997).

The parties do not cite any governing Arizona authority regarding the relevant type of prejudice in the specific situation where the insured would have given notice not of a loss but of a sale of the underlying property. But courts have found insurers must prove prejudice from an insured's actions outside the context of notice of loss. *See Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 433 (Ariz. Ct. App. 2010) (applying prejudice inquiry to breach of "voluntary payments clause"). Accepting therefore that it is USAA's burden to show prejudice, it has not done so sufficiently to entitle it to summary judgment.

"Delay [in providing notice] alone does not establish prejudice." *Liberty Mut. Fire Ins. Co.*, 963 P.2d at 302. Rather, the burden is on the insurer to prove "actual prejudice resulting from the delay." *Id.*; *see Desert Mountain*, 236 P.3d at 434 (rejecting argument that failure to obtain releases was prejudice because insurer did not identify any demands "that would have been barred by such a release"). An insurer merely asserting it would have acted differently by withdrawing coverage seems unlikely to satisfy this standard. *Cf. Daniels v. State Farm Mut. Auto. Ins. Co.*, 868 P.2d 353, 355 (Ariz. Ct. App. 1994) (failure to notify insurer of new car did not prejudice insurer because coverage already existed during relevant period). Even if it did, USAA provides scant evidence it would in fact have cancelled the policy; rather than pointing to USAA's internal procedures or examples of cancelled policies following similar breaches, it points only to a declaration's conclusion it would have cancelled the policy. (Doc. 46-1 at 17.) This "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient" to merit summary judgment in USAA's favor. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

Given USAA's failure to provide legal authority regarding the type of prejudice it must show to rely on the notice-of-change provision and absent a more robust showing of

factual prejudice, the court cannot determine that USAA suffered the type of prejudice that would defeat coverage.

**C. Insurable Interest and Waiver**

USAA's third and fourth arguments, and White's primary argument for partial summary judgment, involve Arizona's insurable interest requirement. White also argues USAA cannot rely on the insurable interest requirement based on its decision to retain Ford's premiums. Although USAA has the better argument on insurable interest, its estoppel or waiver by retaining the premiums entitles White to summary judgment.

The governing insurable-interest statute provides:

> No insurance contract on property or of any interest therein or arising therefrom shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured.

A.R.S. § 20-1105(A). As used in this statute, "insurable interest" is "any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." A.R.S. § 20-1105(B). USAA argues once Ford sold the BMW to Eddia, Ford no longer had an insurable interest in the BMW such that, per A.R.S. § 20-1105(A), the USAA policy was no longer enforceable. (Doc. 46 at 10-11.) Existing Arizona authority supports USAA's view that it is Ford's interest in the BMW that mattered.

In general, Arizona law provides "a person or entity that lacks an insurable interest cannot maintain or enforce an insurance contract." *Gaslight Inn LLC v. Mut. of Enumclaw Ins. Co.*, No. 1 CA-CV 20-0600, 2021 WL 3743821, at *4 (Ariz. Ct. App. Aug. 24, 2021). White argues the "insurable interest" requirement extends to Eddia's interest in the BMW. (Doc. 55 at 12-13.) There is no dispute Eddia had an insurable interest in the BMW at the time of the accident. But Arizona law looks to the insurable interest of the named insured, not whether someone, somewhere, also might have had an insurable interest. For example, in *Hults v. Pash*, 779 P.2d 821, 823 (Ariz. Ct. App. 1989), the Arizona Court of Appeals concluded the sale of an automobile meant the named insured lacked an insurable interest

at the time of the accident and the insurance policy did not apply.[2] *See also Gaslight*, 2021 WL 3743821, at *4 ("satisfying the statutory requirements for an insurable interest does not entitle a person or entity to insurance coverage"). If White's view of "insurable interest" were correct, the relevant inquiry in *Hults* would have been the insurable interest of the purchaser, not the seller. White has not cited any authority from any jurisdiction adopting her view that the relevant "insurable interest" for purposes of a given insurance policy automatically follows ownership of the property.

Ford's sale of the BMW extinguished his insurable interest in the BMW and generally would render the policy inapplicable. USAA cannot, however, rely on that general rule. "There is a conflict of authority on the question of whether an insurer may be barred by waiver or estoppel from asserting the lack of an insurable interest." *Lack of insurable interest as subject to waiver and estoppel*, 3 Couch on Ins. § 41:7. One side of that split reasons the doctrines of waiver and estoppel do not apply because the requirement of an insurable interest is a matter of public policy that cannot depend on the actions of an insurer. *Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 687 (Md. 1988); *see Farm Bureau Mut. Ins. Co. of Arkansas v. Glover*, 616 S.W.2d 755, 757 (Ark. Ct. App. 1981) ("the doctrines of waiver and estoppel are completely inapplicable"). But Arizona seems to be on the other side of the split, making waiver and estoppel applicable in this context. And USAA explicitly concedes this point by arguing it "could have engaged in conduct that would have estopped or waived its right to assert an insurable interest defense." (Doc. 53 at 15.) USAA engaged in such behavior by not returning premiums.

At least as early as 1934, the Arizona Supreme Court reasoned an insurer cannot accept premiums but then claim the insured had "forfeit[ed]" the policies. *Greber v.*

---

[2] White argues the reasoning in *Hults* depended on the policy language at issue. According to White, the "specific use of the phrase '*Your* auto' found on the declarations page . . . establishe[d] the necessity of ownership" in *Hults*. (Doc. 55 at 16.) The Declarations Page in the USAA policy stated "Description of Vehicle" instead of "Description of Your Auto." (Doc. 55 at 16.) But the USAA policy defined "Covered person" as "Any person using *your* covered auto" and "Your covered auto" as "Any vehicle shown on the Declarations." (Docs. 55-2 at 2 (emphasis added); 55-3 at 2.) The USAA policy language therefore appears to contain language sufficiently establishing owning the vehicle is necessary for purposes of the insurable interest requirement.

*Equitable Lif Assur. Soc. of U.S.*, 28 P.2d 817, 819 (Ariz. 1934). "[T]he acceptance by the insurer of premiums knowing that facts exist which would authorize it to declare a forfeiture constitutes a waiver." *Id.* The Arizona Supreme Court built on that principle in a case presenting facts almost identical to this one.

In *Collier v. General Exchange Insurance Corp.*, William B. Urquhart had purchased a new car along with "the usual insurance policy" provided by car dealers at that time. 118 P.2d 74, 75 (Ariz. 1941). Urquhart then sold the car and purported to assign the insurance policy "which still had some time to run" to the buyer. *Id.* Upon learning of the sale of the vehicle, the insurer stated the policy could not be assigned but it would return "the unearned premium." *Id.* The insurer stated it would calculate the unearned premium not from the date the car was sold but from the date the company received the policy back from the insured. *Id.* In other words, the insurer claimed the insurance ceased as of the date of the sale but would only return the premiums for the period after it received the paper policy back. The new owner of the car was in an accident, and the insurer claimed the policy was no longer in effect. The Arizona Supreme Court concluded "[t]he injustice and unreasonableness" of the insurer's position was "obvious." *Id.* The insurer "having elected to continue the policy in force for the purpose of earning a premium, it cannot now be heard to say that it was not in force for the purpose of insurance." *Id.* at 77.

White cited a more recent Arizona Court of Appeals case, *McCollum v. Continental Casualty Co.*, which relied on *Greber* and *Collier*. 728 P.2d 1242 (Ariz. Ct. App. 1986). In that case, the insurer had again attempted to retain premiums while claiming the policy was not valid. *Id*. That court recognized an insurer may waive arguments regarding "the continued existence of the policy" if it commits certain acts, such as the "retention of . . . premiums." *Id.* at 1245. Of particular importance for White's situation, *McCollum* went on to state "[a]n insurer cannot treat a policy as void for the purpose of denying coverage, and at the same time treat it as valid for the purpose of retaining premiums collected thereon."[3]

[3] In 2022, another judge in this district reasoned that under *Greber* and *McCollum*, "[t]he waiver issue arises when an insurer knows of facts that would invalidate the policy but issues it anyway." *Stone & Kelso LLC v. Allied Ins. Co. of Am.*, No. CV-20-00160-TUC-JCH, 2022 WL 4484437, at *9 (D. Ariz. Sept. 27, 2022), *aff'd sub nom. Stone & Kelso,*

*Id.*; *see also Services Holding Co., Inc. v. Transamerica Occidental Life Ins. Co.*, 883 P.2d 435, 443-44 (Ariz. Ct. App. 1994) (retention of premiums was "particularly relevant" to establishing waiver"); *Continental Ins. Co. v. Kingston*, 114 P.3d 1158, 1162-63 (Utah App. Ct. 2005) (citing *McCollum* and cases from Nebraska and New York); 14 Williston on Contracts § 41:20 (4th ed.) ("an insurer generally cannot assert a forfeiture of a policy when it has knowledge of an existing condition which renders the policy void but retains the unearned portion of the premium or fails to return or tender it back within a reasonable time").

USAA cites an opinion by the Washington Supreme Court for the proposition that "denying a claim based on the lack of an insurable interest does not require refunding premiums." (Doc. 53 at 14 (citing *Gossett v. Farmers Ins. Co. of Washington*, 948 P.2d 1264, 1274 (Wash. 1997).) In that case, the insurer conceded the insured had some insurable interest and the dispute was only over its extent. The insurer had paid a portion of the claim and was not claiming the policy had become unenforceable in its entirety based on the lack of insurable interest. Here, USAA appears to be arguing the policy became completely unenforceable or void once the BMW was sold, so *Gossett*'s reasoning does not apply.

There is no dispute that after USAA learned Ford had sold the BMW, it did not attempt to revoke the policy and refund the amount Ford had paid for coverage between August and December. (*See* Doc. 48-2 at 1.) Instead, USAA chose to retain the premiums and assert the policy became unenforceable or void immediately upon the sale of the BMW. USAA does not cite any Arizona authority that would allow it to do so.

USAA argues adopting White's view of estoppel or waiver would produce an "absurd" result where "*any* insurer who denies *any* claim must immediately refund all premiums to avoid waiving defenses." (Doc. 58 at 7.) This argument misunderstands the Arizona cases applying estoppel or waiver in similar contexts.

---

*LLC v. Allied Ins. Co.*, No. 22-16648, 2023 WL 6999448 (9th Cir. Oct. 24, 2023). That court did not address *Collier*, which uses the same waiver analysis in the context of a policy that was indisputably valid for a period and analyzed whether the insurer had to cover an accident based on subsequent events.

Again, Arizona law provides an insurer "cannot treat a policy as void for the purpose of denying coverage, and at the same time treat it as valid for the purpose of retaining premiums." *McCollum,* 728 P.2d at 1245. The clearest application of this doctrine is where, as here, the insurer is not merely disputing the extent of coverage under a policy but is claiming the policy became invalid as of a certain date, *i.e.*, provided no coverage whatsoever. It appears USAA concluded the policy was void as of the sale date of the BMW, but also concluded it was entitled to retain the premium for coverage after the sale date. It does not explain what that premium was paying for and why, accepting its position, the premium was not a windfall to USAA. "The injustice and unreasonableness" of USAA's position is "obvious." *Collier*, 18 P.2d at 75.

Arizona courts normally treat estoppel or waiver as "a question of fact to be determined by the trier of fact." *Chaney Bldg. Co. v. Sunnyside Sch. Dist. No. 12*, 709 P.2d 904, 907 (Ariz. Ct. App. 1985). But here the material facts are undisputed. USAA is either estopped or it waived the insurable interest requirement by retaining the portion of premium attributable to the period after the sale of the BMW. USAA's motion for summary judgment is denied and White's motion is granted.

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 46) is **DENIED**.

**IT IS FUTHER ORDERED** the Motion for Partial Summary Judgment (Doc. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** no later than **September 17, 2026**, the parties shall file a joint statement explaining what issues remain for trial.

Dated this 10th day of September, 2026.

Krissa M. Lanham

**Honorable Krissa M. Lanham**
**United States District Judge**